**IN THE COURT OF APPEALS OF IOWA**

No. 24-1382
Filed April 9, 2025

**IN THE INTEREST OF A.M.,**
**Minor Child,**

**T.A., Mother,**
        Petitioner-Appellee,

**A.M., Father,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Carroll County, Joseph McCarville,

Judge.


        A father appeals the termination of his parental rights under Iowa Code

section 600A (2024). **AFFIRMED.**


        Joel Baxter of Beverly & Wild Law Offices, P.C., Guthrie Center, for

appellant.

        Jonathan Mailander of Mailander Law Office, Atlantic, for appellee.

        David L. Wiederstein, Atlantic, attorney and guardian ad litem for minor

child.


        Considered without oral argument by Tabor, C.J., and Schumacher and

Chicchelly, JJ.

**SCHUMACHER, Judge.**

A father appeals the termination of his parental rights, which the district court ordered after finding the father abandoned his daughter as defined in Iowa Code section 600A.8(3)(b) (2024) and termination was in the best interest of the child. On our de novo review, we conclude clear and convincing evidence supports a statutory ground for termination and termination of the father's parental rights is in the best interest of the child.

## I.      Background Facts and Prior Proceedings

A.M. was born in late 2017. Her parents, although never married, resided together until about six months after A.M.'s birth. In December 2018, the parties entered into a stipulation defining their respective rights as to A.M. The court adopted the parties' stipulation and awarded sole legal custody and physical care of A.M. to the mother. The father was granted unsupervised visitation, subject to the approval of the mother.

Unsupervised visitation was conditioned upon the father providing evidence of sobriety through random drug tests at the mother's request. Unmet conditions required the father's visitation to be supervised by a family member or a professional supervisor to be paid for by the father. Through most of 2021, the father exercised sporadic contact with A.M. "when he was around." While the father initially moved out of the home in 2018, the parents had an off-and-on relationship up to early summer 2021, and the father would sometimes stay at the home with the mother and A.M.

The father was ordered to pay child support of $50.00 per month beginning November 1, 2018. The father made no payments toward his court ordered child support obligation.

Since A.M.'s birth, the father has been in prison at least twice and has resided at a residential correctional facility (RCF) three times.[1] His most recent stay at the RCF began two days before the termination hearing because of a parole violation.[2] Apart from the parole violation, the father was arrested on two other occasions since his most recent release from prison. The father struggles with illegal substances, with the father testifying that his drug of choice is methamphetamine. After his most recent release from prison, the father maintained sobriety for four months.

In 2024, the mother of A.M. petitioned to terminate the parental rights of the father under Iowa Code section 600A.8(3)(b), alleging abandonment in failing to provide financial support and failing to maintain contact with A.M.[3] After an evidentiary hearing, the district court terminated the father's parental rights to A.M. The father appeals.

---

[1] The record is unclear whether the father has served two or three terms of imprisonment.

[2] The father testified the basis of the current parole violation was for not maintaining contact with his parole officer, not following through with substance-use treatment, using a controlled substance, and being arrested on a new criminal charge.

[3] The mother's petition included additional grounds for termination. We do not address those additional grounds.

**II.      Standard of Review**

We review termination orders under chapter 600A de novo. *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). We give weight to the district court's fact findings, particularly on witness credibility, but we are not bound by them. *Id.*

**III.     Analysis**

**A.      Statutory Ground**

The mother's petition asserted abandonment of A.M. by the father under several grounds, including section 600A.8(3)(b):

> If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

Chapter 600A also defines abandonment as "reject[ing] the duties imposed by the parent-child relationship . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide the support of the child or to communicate with the child." Iowa Code § 600A.2(20).

Abandonment under section 600A.8(3)(b) has financial support and contact requirements. *In re G.D.*, No. 20-0984, 2021 WL 2126174, at *3 (Iowa Ct. App. May 26, 2021). We have referred to these as "cash" and "contact" requirements.

*Id.* To establish abandonment, the petitioning parent must prove the other parent's failure to meet *either* the cash or contact requirement—it is unnecessary for the petitioning parent to prove both. *Id.*

**1.     Contribution of Financial Support**

The father was ordered to pay child support of $50.00 per month beginning November 1, 2018. He paid zero sums toward this court ordered child support obligation. While he has been incarcerated off and on since the entry of the support order, he has had periods of employment. Outside the court ordered support, the father indicates the paternal grandfather sent the mother money sometimes on his behalf. The mother denies this.[4]

A.M. was seven years old at the time of the termination hearing. Following our de novo review, we find clear and convincing evidence that the father failed to contribute toward support of the child of a reasonable amount according to his means. With this conclusion, we need to go no further to affirm the district court. But we elect to also address the contact element.

**2.     Contact**

To establish the father's failure to meet the contact requirement, the mother had to prove: (1) the father failed to visit the child at least monthly when physically and financially able to do so and when not prevented from doing so by the mother; (2) the father failed to regularly communicate with the child or with the mother when physically and financially unable to visit the child or when prevented from visiting

---

[4] The only witnesses at termination hearing were the mother and father. And there is no indication in the record what amount of money the father claims he provided or the date that any sums were provided.

the child by the mother; and (3) the father failed to openly live with the child for a period of six months within the one-year period immediately preceding the termination-of-parental-rights hearing and during that period openly held himself out to be the parent of the child. *See* Iowa Code § 600.8(3)(b)(1)–(3).

The father does not meaningfully challenge the district court's finding that he failed to meet the contact requirements of section 600A.8(3)(b)(1) through (3). Instead, he seeks to excuse his lack of contact by contending the mother prevented contact.[5] We reject this argument for the reasons below.

The father has been incarcerated for various crimes, ranging from eluding and driving while barred to burglary, all seemingly tied to the father's unresolved methamphetamine addiction. After the father was released from prison in 2024, he was re-arrested on a probation violation. At the time of the termination hearing, he was residing at a residential treatment facility.

To be certain, the father does not contend he had monthly visits with the child or that he even attempted this frequency of contact. The father has not physically seen the child since late 2021 or early 2022. At best, it has been over two and a half years since the father has had contact with his daughter in person.

There is no persuasive evidence that the father had regular communication with the mother or the child. He did not phone the child when he had the mother's phone number or write to A.M. While the mother testified that she changed her

---

[5] While the father's appellate briefing references exhibits that included text messages, communication on Facebook messenger, and phone records, such were neither contained in our record nor admitted at the termination hearing. While there was not an exhibit maintenance order filed, the transcript reflects the admission of only two exhibits, the 2018 order approving the parties' custodial stipulation and the child's birth certificate.

phone number in April 2023 and did not provide such to the father, the father had the mother's phone number from the parties' separation in 2021 through 2023. The mother shared that after 2021 through 2023, the father contacted her once. And his only contact attempt with the mother since his most recent release from prison in 2024 and the filing of the termination petition was a single Snapchat to the mother.[6]

Lastly, it is undisputed that the father did not live with the child for a period of six months within the one-year period immediately preceding the termination of parental rights.

We conclude clear and convincing evidence exists that the father abandoned A.M. within the statutory definition of Iowa Code section 600A.8(3)(b). Any efforts by the father were a marginal effort at best and do not prohibit a finding of abandonment.

**B.    Best Interests of the Child**

In determining the best interests of a child, we examine whether a parent has actively assumed responsibilities of parenthood by considering factors such as the fulfillment of financial obligations, continued interest in the child, genuine efforts to maintain communication with the child, and the establishment and maintenance of a place of importance in the child's life.  *Id.* § 600A.1(2).

We also draw from the statutory best-interest framework outlined in Iowa Code chapter 232, which directs the court to "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and

---

[6] The mother testified that the paternal grandmother had some limited contact with the mother to set up contact for herself, rather than the father.

growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2); *see In re A.H.B.*, 791 N.W.2d 687, 690–91 (Iowa 2010) (finding it useful to apply the best-interest framework of section 232.116(2) and (3) to the best-interest analysis under chapter 600A).

While the father speculates about a future relationship with his daughter, there is a lack of evidence in the record that terminating his parental rights would be contrary to A.M.'s best interests. *See A.H.B.*, 791 N.W.2d at 691 ("We cannot deprive a child of permanency after the petitioner has proved a ground for termination by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (cleaned up)). The evidence clearly and convincingly establishes that termination is in A.M.'s best interests. The father had not seen A.M. in several years by the termination hearing. He has been in and out of prison and residential correctional facilities for much of A.M.'s life. He has an unaddressed methamphetamine addiction. While we wish the best for his recovery, following our de novo review, we agree with the district court's finding that terminating the father's rights is in the best interests of A.M.

## IV. Conclusion

As the district court correctly determined the father abandoned the child under section 600A.8(3)(b) and termination is in A.M.'s best interests, we affirm the termination of the father's parental rights.

**AFFIRMED.**